VIVIAN TREZEVANT v. C. W. RAINS ET AL.

No. 3388.

**Undue Influence — Will.** — See facts tending to show that a will offered for probate had been procured by undue influence used by the beneficiaries. The facts require that a verdict sustaining the will be set aside.

APPEAL from Galveston. Tried below before Hon. WM. H. STEWART.

*L. E. Trezevant,* for appellant, cited: Rev. Stats., art. 4859; Williams v. Robinson, 42 Vt., 658; Delafield v. Parish, 25 N. Y., 29; Weld v. Sweeny, 5 Cent. Law Jour., 169; 1 Redf., 53, 122, 515, 516, 537, 538; Schoul., secs. 194, 238, 246; Jarm., 140; Bige. on Fraud, 191; McLaughlin v. McDavitt, 63 N. Y., 213; Gay v. Gilliland, 92 Mo., 250; Lynch v. Clements, 24 N. J. Eq., 431; Harrel v. Harrel, 1 Duv., 203; Fountain v. Brown, 38 Ala., 72; Drake's Appeal, 45 Conn., 9; Davis v. Dean, 26 N. W. Rep., 737; Cuthberton's Appeal, 97 Pa. St., 163; Kevil v. Kevil, 2 Bush, 614; Whitman v. Morey, 2 N. E. Rep., 256.

*James B. & Charles J. Stubbs,* for appellees.—Mere persuasions or entreaties to execute a will in behalf of the beneficiaries are not sufficient causes for refusing the probate of a will. Robinson v. Stuart, 73 Texas, 267.

As is well said in 1 Redfield on Wills, 127, "It is painful to reflect upon what absurd grounds the wills of deceased persons will sometimes be attacked. But the courts are commonly found sufficiently favorable to the upholding of all reasonable testamentary acts."

The quantum of understanding necessary to the valid execution of a

will is, that the testator should know and understand what he is doing. 1 Redf., 124. If he had the capacity to know his estate, the object of his affections, and to whom he desired to leave his property, the will must stand. 1 Redf., 128.

As to undue influence, and what constitutes it: 1 Redf. on Wills, 518, 520, 522, 527, 528, 532.

Undue influence, to avoid a will, must be such as to overcome the free agency of the testator at the time the instrument was made. 1 Redf., 534.

Lawful influence, such as that arising from legitimate family and social relations, must be allowed to produce its natural results, even in influencing last wills. Influence arising from gratitude, affection, or esteem is not undue. 1 Redf., 532, 534. See also Vance v. Upson, 66 Texas, 488.

ON REHEARING.

STAYTON, CHIEF JUSTICE.—This is an appeal from a proceeding probating the will of Mrs. Maria Rains.

. The probate of the will was contested by the son of a deceased daughter of Mrs. Rains, on three grounds: It was claimed, that Mrs. Rains had not sufficient mental capacity to make a will at the time the paper was executed, and that in fact the signature to the will was not hers, but that of one of the beneficiaries, who directed and controlled the pen which made the signature while it was in the powerless hand of the testatrix.

It was further contended, that the will was the result of undue influence, exercised by the beneficiaries under it upon the testatrix; but the will was admitted to probate on appeal to the District Court, and that judgment was affirmed at a former day of this court, on report of Commission of Appeals.

The case is now before us on motion for rehearing; and on a full examination of the entire evidence we feel constrained to grant the motion, on the ground that the evidence bearing on the question of undue influence was such as to have required the verdict of the jury to be set aside and a new trial granted.

The will was made at a time when the testatrix was expected to die at any hour; four days before its execution the family physician had announced that fact, and all the family present knew that her death must soon occur; she was as feeble as she could be and live.

About three weeks before, she returned from California, where she had been in quest of health, to her home in Galveston, where she had a sister residing, with whom she was on most friendly terms; but that sister was not advised of her return until nearly three weeks had elapsed, during all of which time the testatrix was desperately ill. When she visited the house, her reception by the children of the dying woman who were with her, if there is any faith to be placed in human testimony, was not such

as the relationship of the parties and the sorrowful surroundings would ordinarily have secured.

Mrs. Burns, a daughter of the testatrix, lived in another town, not remote from Galveston, the residence of her mother, but was not advised of her mother's return and dying condition until after the will was made; and the fact that a brother, who was by the will cut off with $1, although shown to be the favorite son of the testatrix, for whom most liberal provision had been made in a former will of the mother, by telegram informed Mrs. Burns of her mother's condition, seems to have been the real ground, although some other was given, on which some or all of the three children who, under the will, would take four-fifths of her estate, caused that brother to be arrested and held in prison until the morning of the day on which his mother died.

The manner in which Mrs. Burns was received by her brothers and sisters when she reached the home of her mother clearly showed that she was not wanted there by the children who under the will would take the greater part of the estate.

The three children to whom four-fifths of the estate would pass under the will were with the mother at the time the will was made, and so continued until her death. The mother had not been on friendly terms with one of them, a daughter, for many years. Such was the estrangement that the mother had not permitted the daughter to enter her house for many years.

The mother and father had become estranged after a long married life. Litigation arose between them, which perhaps ended in divorce.

Those who claim under the will offered for probate arrayed themselves on the side of the father, and the mother complained bitterly of their conduct.

Mrs. Burns was friendly to her mother in that controversy; and the son who was cut off with $1, and sent to prison by his brothers and sister while his mother lay dying, was her steadfast support in all her trouble.

Mrs. Rains had expressed an intention at different times to provide in her will for contestant, who was her grandson, and on account of physical affliction unable to take care of himself, but to him the will gave nothing.

In view of the fact that the case must be tried again, it would not be proper to comment on the evidence; but acting on the motion before us, it must be stated that the testatrix, at the time the will was made, was surrounded by the children who would take the greater part of the estate; she was evidently in a condition in which she was likely to be easily influenced; the evidence tends to show the exclusion of the other children and relatives of the dying woman was not necessary for her welfare, and there is much evidence tending to show that the course pursued was with intent that the beneficiaries should have control of the testatrix in all respects,

with a view to shape her course in accordance with what they deemed their interests.

There may have been no undue influence; but such is the difficulty of reconciling the acts and language of those who would take under the paper offered for probate with any other conclusion than that the paper was the result of undue influence exercised by them upon their mother, then too feeble to resist importunity, that justice requires this cause to be tried again.

Those who seek to take under the paper might possibly have explained many things that cast suspicion on their motives and conduct, but they were silent.

The former judgment of this court will be set aside, and judgment now rendered reversing the judgment of the District Court and remanding the cause for another trial.

It is so ordered.

*Reversed and remanded.*

On rehearing delivered July 25, 1892.