**DAVENPORT et al. v. MINSHEW et al.**

**No. 9996.**

Court of Civil Appeals of Texas. San
Antonio.

April 14, 1937.

Rehearing Denied May 12, 1937.

L. J. Brucks, of Hondo, for appellants.

Ed R. Bumpass, of Terrell, Frank Killough, of Houston, O. W. Percy, of George West, and W. G. Sears, of Houston, for appellees.

SLATTON, Justice.

Lela Odis Minshew, Kelso Renshaw, Sue Hooks, and Frances Cleveland Downs, all joined pro forma by their husbands, on the 18th day of November, 1935, filed suit in the county court of Live Oak county, Tex., seeking to set aside an order of the probate court of Live Oak county, Tex., dated the 3d day of December, 1934, which order had probated the will of Wesley L. Davenport, deceased. The parties defendant to that action were James Monroe Davenport and George Goodhugh Davenport, who were the beneficiaries and independent executors of the will, probated as aforesaid.

The grounds urged for setting aside the judgment of probate and the will were: That such will was not the will of the deceased, and that the deceased lacked testamentary capacity, and that the will was the result of undue influence.

A trial was had in the county court of Live Oak county, and judgment entered sustaining the will. The aggrieved parties appealed to the district court of Live Oak county, where there was a trial to a jury. The trial court submitted to the jury two special issues, as follows:

1. "Do you find from a preponderance of the evidence that Wesley L. Davenport, deceased, either attached his signature to the instrument dated October 15, 1934, and offered in evidence as his last Will and Testament or authorized some other person to attach his signature? Answer yes or no." The jury answered "No."

2. "Do you find from a preponderance of the evidence that the deceased, Wesley L. Davenport, possessed testamentary capacity (as that term is hereinafter defined) at the time of his execution of the instrument (if you have found that he executed it) of date October 15, 1934, offered in evidence as his last will and testament? Answer yes or no." The jury answered "Yes."

The appellants objected to the submission of special issue No. 1, for the reason that

there was no evidence in the record from which a jury could find that the said Wesley L. Davenport did not execute the instrument offered in evidence, or did not authorize W. S. Ethridge to sign the same for him; which objection was overruled by the trial court.

The appellants also, after the jury's verdict was received by the court, filed a motion for judgment urging the same reasons as aforesaid, which was overruled by the court and judgment entered denying the probate of the will, based upon the negative answer of the jury to special issue No. 1, thus setting aside the judgments of the county court, which had theretofore admitted such will to probate. The appellees did not object to the charge of the trial court in its failure to submit the issue to the jury of undue influence, nor did they specially request an issue involving that question.

From the evidence it appears that Wesley L. Davenport, deceased, was a man of about 80 years of age, and the parties to this litigation were his children, and his only heirs at law; that he had lived in southwest Texas for 15 to 20 years next preceding his death; that the purported will was executed some 30 days prior to his demise. As to the manner of its execution, it may be said that the record is without dispute and is substantially as follows:

Prior to the execution of the will the deceased had employed W. S. Ethridge, an attorney at law, who resided at Bandera, Tex., to represent him in a foreclosure proceeding instituted in Live Oak county, Tex.; that he sent his son, who lived some 30 miles from the town of Bandera, where the deceased was staying at the time, to ask Mr. Ethridge to come and draw some papers for him. Mr. Ethridge and his stenographer, Miss Click, accompanied the deceased's son to the ranch where the deceased was then ill. Mr. Ethridge, after the usual greetings and some conversation with the deceased, asked the deceased what he could do for him, and he told him that it was his desire to make a will. Mr. Ethridge made notes of the disposition Mr. Davenport desired to make of his property, and shortly thereafter, in another room of the home, dictated the will to his stenographer, who wrote the same on a typewriter, and after it had been prepared he took it in and read it over to Mr. Davenport, the deceased; and after two or three minutes Mr. Davenport, the deceased, said,

"That is all right, that's what I want." Mr. Ethridge then told him, "You can sign here, the girl has left a blank, there is the place for you to sign." Mr. Davenport, the deceased, raised up and sat on the side of the bed. He was very shaky and awfully nervous and said that he didn't believe he could sign it, that he couldn't control his hand. Mr. Ethridge said, "I think you can," and gave him an envelope, which was lying on the table, and told deceased to practice on the envelope. The deceased tried, but was so wobbly that he could not sign his name. The deceased then asked Mr. Ethridge if he could not sign by a mark, and he told him that he could, that that would be all right, but it would be better if he could sign his own name. The deceased said he didn't believe he could. Mr. Ethridge then signed the name of the deceased and deceased put his fingers on the pen and made his cross. Mr. Ethridge explained to him that it must be witnessed, and the deceased asked Mr. Ethridge if he could not witness it, and he said that he could. Mr. Ethridge then asked him if he wanted him, Mr. Ethridge, and Miss Click to witness it, and the deceased said that he did. All of which occurred in the deceased's room, with only the deceased, Mr. Ethridge, and Miss Click present. Mr. Ethridge and Miss Click remained at the house over night, and the next morning the deceased told Mr. Ethridge to take the will to the First State Bank and leave it there. This was testified to by Mr. Ethridge and was substantially the same as given by Miss Leah Click.

The only evidence in the record which is claimed to dispute the evidence as hereinbefore detailed, is to the effect that Wesley L. Davenport, deceased, was a good businessman and was able to read and write, and long prior to the execution of the will signed his name to bonds, checks, etc., together with testimony of witnesses who said that they saw the deceased shortly prior to his death, and believed the deceased could read and write at the time, and the further fact that because the will was probated shortly after the demise of Wesley L. Davenport, by his two sons, without notice to their sisters, the appellees here—that all of this made an issuable fact to go to the jury.

Article 8283, R.S.1925, provides that "Every last will and testament except where otherwise provided by law, shall be

953

in writing and signed by the testator or by some other person by his direction and in his presence, and shall, if not wholly written by himself, be attested by two or more credible witnesses above the age of fourteen years, subscribing their names thereto in the presence of the testator."

■ Our Supreme Court in Trezevant v. Rains, 19 S.W. 567, in construing this statute held, in effect, that a bystander may make the complete signature at the request of the testator, who from physical prostration can render no assistance.

To the same effect is Short v. Short (Tex.Civ.App.) 67 S.W.(2d) 425, and Franklin v. Martin (Tex.Civ.App.) 73 S.W.(2d) 919.

■ Where all of the statutory requirements as to due execution are testified to by disinterested witnesses, who are not in anywise impeached, as in this cause, we think it unnecessary to submit the question of due execution to a jury. In other words, the facts and circumstances as pointed out to us by the appellees in this record do not, in our opinion, have any probative force tending to show that the will in this cause was not executed in accordance with our statutes. This being true, there was no necessity for the special issue No. 1, to have been submitted by the trial court to the jury. Further, such special issue having been submitted to and answered by the jury, the trial court, upon proper motion which was made in this cause, should have disregarded the answer of the jury to such special issue. The jury having determined the only issuable fact; viz., that the deceased at the time in question possessed testamentary capacity, judgment should have been entered by the trial court sustaining the instrument as the last will and testament of Wesley L. Davenport, deceased.

■ In our consideration of this case, we have considered the rules as laid down by our Supreme Court in Mills et al. v.

Mills, 228 S.W. 919, as well as in Reinhardt et al. v. Nehring et al., 291 S.W. 873, and from these cases we conclude that the rule with reference to the submission of issues of fact to a jury are the same in the probate of wills as they are in other civil cases. Since the decision of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, the courts have held that in order to present an issuable fact to the jury, the evidence must be stronger than a mere surmise or suspicion.

Applying those rules to the case at bar, there was no issue to be determined by the jury as to due execution.

■ We are then to consider our duty with reference to the disposition of this case. The record shows that this cause below was well developed on all phases of the evidence, and this being the state of the record, we believe it to be our duty to reverse the judgment of the trial court and here render such judgment as should have been entered in the court below. Article 1856, R.S.1925, provides that "When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial."

From what we have said, it clearly appears that there is no matter of fact to be ascertained, that there is no damage to be assessed, and that it appears certain here what should have been decreed. It follows that the judgment should be reversed and here rendered that appellees take nothing by reason of their suit against appellants, and pay all costs of this litigation; and that this judgment be certified to the probate court of Live Oak county for observance. It is so ordered.